UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Ocala Division

FILED

2012 MAY 24 PM 12: 08

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA FLORIDA

VANGUARD HIGH SCHOOL
GAY-STRAIGHT ALLIANCE, an
unincorporated association, S. K., a
minor by and through parents J.K.
and R.K., and D.L., a minor by and
through parent A.A.,

    Plaintiffs,

v.

JIM YANCEY, in his official
capacity as Superintendent of the
School District of Marion County,
Florida, and SCHOOL BOARD FOR
MARION COUNTY, FLORIDA,

    Defendants.

No. _____

5:12-CV-268-OC-34TBS

/

## COMPLAINT
### (WITH INJUNCTIVE RELIEF SOUGHT)

Plaintiffs VANGUARD HIGH SCHOOL GAY-STRAIGHT ALLIANCE, an unincorporated association, S. K., a minor by and through parents J.K. and R.K., and D.L., a minor by and through parent A.A., sue Defendant JIM YANCEY, in his official capacity as Superintendent of the School District of Marion County, Florida, and SCHOOL BOARD FOR MARION COUNTY, FLORIDA, and allege as follows:

## INTRODUCTION

1. S.K. and D.L. are juniors at Vanguard High School ("Vanguard High") in Ocala, Florida. To create a safer and more welcoming environment for lesbian, gay, bisexual, and transgender ("LGBT") students and allied straight students, S.K. and D.L. want to start a Gay-Straight Alliance ("GSA") as an official student club at the school. However, Superintendent Jim Yancey has denied the students' application to run the GSA because he contends the student club's purpose is not age appropriate. His denial violates the federal Equal Access Act, which protects students' ability to form and run school clubs, as well as the First and Fourteenth Amendments to the United States Constitution.

2. Plaintiffs ask this Court to enjoin the school officials from refusing to recognize Vanguard GSA as a student club and allow it to function as a school club on par with other clubs at school and declare that their past refusal to permit the operation of the GSA at Vanguard High violates federal law and the Plaintiffs' constitutional rights.

## JURISDICTION AND VENUE

3. Plaintiffs bring this action pursuant 42 U.S.C. § 1983 for violations of civil rights under the First and Fourteenth Amendments to the United States Constitution and the Equal Access Act, 20 U.S.C. §§ 4071, *et seq.*

4. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights).

5. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) and M.D. Fla. Loc. R. 1.02(c). The Superintendent and School Board reside in this district and division and the unlawful practices that give rise to the claims herein occurred within this district and division.

## PARTIES AND PERSONS OF INTEREST

6. Plaintiff **Vanguard High School Gay-Straight Alliance** ("Vanguard GSA") is an unincorporated voluntary association of students who attend Vanguard High in Marion County, Florida. Vanguard GSA brings this suit on behalf of itself as an organization and on behalf of its members, who are comprised of individual students attending Vanguard High.

7. Plaintiff **S.K.** is a junior at Vanguard High. S.K. is the vice-president and a member of the Vanguard GSA. As a student at Vanguard High, S.K. remains subject to the policies, practices, and customs of the School Board and the Superintendent. S.K. is under the age of eighteen and sues individually and pursuant to Federal Rule of Civil Procedure 17(c) by and through S.K.'s parents.

8. Plaintiff **D.L.** is a junior at Vanguard High. D.L. is the president and a member of the Vanguard GSA. As a student at Vanguard High, D.L. remains subject to the policies, practices, and customs of the School Board and the Superintendent. D.L. is under the age of eighteen and sues individually and pursuant to Federal Rule of Civil Procedure 17(c) by and through D.L.'s mother.

9. Vanguard GSA, S.K., and D.L., shall be referred to collectively as "GSA Plaintiffs" and "Plaintiffs."

10. Defendant **Jim Yancey** ("Yancey" or "Superintendent") is superintendent of the School District of Marion County. Pursuant to Florida Statutes Sections 1001.32(3), 1001.49, and 1001.51 and the School Board's Policy Section 3.20, Yancey is vested with the authority to conduct general oversight over the School District, to recommend and execute policies and rules pertaining to the District's operation, to enforce all policies and rules of the School Board, to carry out any other responsibilities delegated to him by the School Board, and to carry out responsibility for the administration of the entire school system. Yancey, as a School District official, is a state actor, is sued in his official capacity, and at all times relevant hereto was acting and continues to act under color of law.

11. The Superintendent is the final decision maker with respect to approval of student clubs to operate at Vanguard High. Accordingly, Yancey is

responsible for the unlawful and unconstitutional decision to refuse to allow the Vanguard GSA to form and operate at the school.

12. Defendant **School Board of Marion County, Florida** ("School Board"), pursuant to the Florida K-20 Education Code, is the governing body of the School District of Marion County, Florida ("School District"), which controls, operates, and supervises all District schools, including Vanguard High. Defendant School Board resides in Marion County, Florida. The School Board, as a political subdivision of the State of Florida, is a state actor. The School Board is subject to civil lawsuits pursuant to Florida Statutes Section 1001.41(4).

13. The School Board sets the policies for the School District. The School Board has delegated final decision-making authority to the Superintendent with respect to approval of student clubs in the School District. Accordingly, through its delegation of final decision making authority to the Superintendent with respect approval of student clubs at Vanguard High, the School Board is liable for Yancey's refusal to allow the Vanguard GSA to form and operate.

14. The Superintendent and School Board shall be referred to collectively as "Defendants."

15. Non-party Milford Lankford ("Lankford") is the Principal at Vanguard High. Defendant Yancey employs and supervises Lankford.

16. Non-party Paige Stephens ("Stephens") is the Student Activities Director at Vanguard High. Defendants employ Stephens; Lankford supervises Stephens.

## GENERAL ALLEGATIONS

17. School officials at Vanguard High have created and maintain a limited public forum. This forum is open to students to form and operate noncurricular student clubs and organizations focused on various topics, interests, and concerns. In and through participating in this forum, students and clubs derive many benefits and opportunities: The clubs (a) are officially recognized as school clubs by school officials, (b) may meet on school property, (c) may have their finances accounted through and by the school, (d) may appear in the school's yearbook, (e) may use school resources and equipment for meetings and activities, and (f) may use school resources to advertise their meetings, information, and purpose as well as solicit new members.

18. Vanguard High has numerous noncurricular student clubs that have availed themselves of this limited public forum, including American Teen Cancer Society, Blue Knights, Chess, Fellowship of Christian Athletes, and Key Club.

19. Some or all of the noncurricular student clubs meet on school premises during noninstructional time.

20. The GSA Plaintiffs wanted and still want to avail themselves of this limited public forum for noncurricular student clubs.

21. On March 2, 2012, Plaintiff D.L. wrote Vanguard High Principal Lankford and explained that D.L. and S.K. want to form and operate a GSA student club at Vanguard High. D.L. provided Lankford with a *Club Proposal* that outlined the GSA's mission and how the GSA could help to reduce bullying, depression, suicide, and drug abuse among students. A true and accurate copy of the *Club Proposal* is attached as Exhibit 1. D.L. requested Lankford's assistance in starting the student club and an appointment to meet with him.

22. On March 5, 2012, Lankford told D.L. and S.K. that he was "uncomfortable" with having a club based on sexual orientation on "his campus." He told them an appointment to discuss the GSA was unnecessary because he will not approve the formation and operation of the GSA.

23. On March 6, 2012, D.L. provided Lankford with two letters to better inform him about the proposed GSA.

24. D.L. provided Lankford with an open letter from the U.S. Department of Education to elementary and secondary educators entitled *Letter to Colleagues Announcing Release of Legal Guidelines Concerning the Equal Access Act* and dated June 14, 2011, available at

http://www2.ed.gov/policy/elsec/guid/secletter/110607.html. This letter informs educators that LGBT students are disproportionately targeted by bullies at school and how a GSA at the school "can play an important role in promoting safer schools and creating more welcoming learning environments." It encourages educators to permit the formation of GSAs where students could "discuss difficult issues openly and honestly, in a civil manner, [so that] our schools become forums for combating ignorance, bigotry, hatred, and discrimination." It also discusses educators' obligation under the Equal Access Act to recognize GSAs on an equal basis relative to other noncurricular student clubs.

25. D.L. also provided Lankford with an open letter from the American Civil Liberties Union's LGBT & AIDS Project dated June 14, 2011, available at https://www.aclu.org/files/assets/gsaletter_20110614.pdf. This letter underlined how a GSA can help a school and reviewed the requirements of the Equal Access Act regarding equal treatment of all noncurricular clubs.

26. After receiving these two letters, Lankford did not change his decision to disallow the Vanguard GSA as a school club.

27. On March 26, 2012, through counsel, GSA Plaintiffs appealed to Superintendent Yancey to reverse Principal Lankford's decision to forbid the GSA to form and operate as a school club. In addition to explaining the GSA's purpose

and the school officials' legal duties, the letter included an attached copy of the *Club Proposal*, which D.L. had earlier provided Principal Lankford. In the letter, the GSA Plaintiffs made it clear that they wanted to form and operate a student club at the start of the 2012-13 school year, as contemplated by School Board Policy No. 4.50 ("Student Clubs and Organizations"). A true and accurate copy of the March 26th Letter is attached as Exhibit 2.

28. On April 19, 2012, when Superintendent Yancey had neither approved nor denied the formation of the Vanguard GSA, D.L. submitted a second request to form a GSA to Principal Lankford. This submission consisted of a *New Club Request Form* and the GSA's Constitution & Bylaws. The form contained on three pages the names of 45 freshmen, sophomores, and juniors interested in joining the GSA. A true, accurate, and *redacted* copy of the *New Club Request Form* is attached as Exhibit 3; a true and accurate copy of the GSA's Constitution & Bylaws is attached as Exhibit 4.

29. The GSA Plaintiffs attempted to secure the signature of Paige Stephens, Student Activities Director, on the *New Club Request Form*. Initially, she said she would sign it. However, she later refused to sign the form pursuant to Lankford's direction and his instruction to remain "neutral."

30. Also on April 19, 2012, the GSA Plaintiffs through counsel provided a copy of these documents to Superintendent Yancey with a cover letter.

31. The stated purposes of the Vanguard GSA, recited in *Club Proposal* and GSA's Constitution & Bylaws, are as follows:

- To create safe environments in schools for students to support each other and learn about homophobia, transphobia, and other oppressions.
- To educate the school community about homophobia, transphobia, gender identity, and sexual orientation issues.
- To fight bullying, discrimination, harassment, and violence at school.

32. On May 15, 2012, Superintendent Yancey through counsel informed the GSA Plaintiffs that he "decline[d] to permit the Alliance to be formed at Vanguard High School at this time." He disallowed the GSA to form and operate at the school because he deemed its purpose inappropriate for the younger students at Vanguard High. A true and accurate copy of this letter from Superintendent Yancey's attorney, William Haldin, is attached as Exhibit 5.

33. The GSA Plaintiffs' applications to form and operate a GSA student club at Vanguard High starting in the 2012-13 school year complied with all requirements, rules, and procedures to gain access and recognition for a

noncurricular student club at Vanguard High. No school official identified a deficiency in the applications other than the GSA's purpose.

34. The Plaintiffs have suffered and will continue to suffer an injury as a result of the Defendants' refusal to permit the GSA Plaintiffs to access the forum for noncurricular student clubs and to operate the Vanguard GSA at the school. Through the exclusion from this forum, GSA Plaintiffs are and will be deprived of the many benefits of participating in the forum. The GSA Plaintiffs are and will be deprived of the opportunity at school to educate nonmembers about LGBT concerns, discrimination, and bullying and to create a safe forum for LGBT students and their allies to discuss these issues.

35. The Vanguard GSA and its members have and, absent judicial intervention, will divert resources to counteract the Defendants' illegal and unconstitutional denial of access to Vanguard High's forum for noncurricular student clubs and the ability to operate the Vanguard GSA at the school. The GSA Plaintiffs have and will continue to have to divert time and resources to meeting outside the school, soliciting members and advertising meetings without using school resources, and otherwise being denied the use of other benefits available to noncurricular student clubs.

36. The Defendants caused and will continue to cause these injuries. The Defendants' denial of access to Vanguard High's forum for noncurricular student clubs and the ability to operate the Vanguard GSA at the school infringes on the U.S. Constitution's First Amendment free speech rights of GSA Plaintiffs to educate, communicate, and associate in the school's forum. The Defendants caused and will continue to cause injury to the GSA Plaintiffs by denying access to the school forum of noncurricular clubs in violation of the Equal Access Act.

37. The GSA Plaintiffs face a real and immediate threat of irreparable injury as a result of the Defendants' actions and threatened actions to continue to deny to the GSA Plaintiffs access to Vanguard High's forum for noncurricular student clubs and the ability to operate the Vanguard GSA at the school.

38. Defendants have acted and threaten to continue acting under color of state law at all times alleged in this complaint. Their actions are by virtue of the official positions they hold.

39. Unless restrained by this Court, the Defendants will continue to deny the GSA Plaintiffs access to Vanguard High's forum for noncurricular student clubs and the ability to operate the Vanguard GSA at the school. The GSA Plaintiffs have been and will continue to be irreparably harmed by the Defendants' denial, which deprives the Plaintiffs' fundamental constitutional right to free

speech and the rights accorded by the Equal Access Act. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

40. GSA Plaintiffs have no adequate remedy at law.

41. Vanguard High students will resume classes on August 20, 2012.

## COUNT 1: EQUAL ACCESS ACT

42. Plaintiffs reallege and incorporate by reference all of the preceding paragraphs in this complaint.

43. The School District and Vanguard High receive federal funding.

44. By refusing to permit the GSA Plaintiffs to access the forum for noncurricular student clubs and to operate the Vanguard GSA at the school, Defendants have denied equal access and a fair opportunity to the Vanguard GSA, its members, D.L., and S.K., who all wish to participate and avail themselves of the benefits of that forum. This denial is a violation of the Equal Access Act.

45. The Defendants' refusal to grant access is based on Vanguard GSA's purpose, the content of the speech that will take place at its meetings, and the nature of the association that will take place at the meetings.

## COUNT 2: FREE SPEECH AND ASSOCIATION

46. Plaintiffs reallege and incorporate by reference paragraphs 1 through 41 and 45 of this Complaint.

47. Defendants have deprived, and continue to deprive, GSA Plaintiffs of their rights to free speech and association under the First Amendment to the United States Constitution, which are secured through the Fourteenth Amendment. The Defendants' refusal to grant the Plaintiffs access to Vanguard High's forum for noncurricular student clubs and to allow them to operate the Vanguard GSA at the school is the cause in fact of the constitutional deprivations.

48. Defendants' denial of the GSA is based on their disagreement with the Vanguard GSA's views and constitutes viewpoint discrimination.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request the following relief:

A. An order declaring Defendants' refusal to grant the Vanguard GSA access to the forum for noncurricular student clubs and the ability to operate at the school violates (a) the Equal Access Act and (b) the First and Fourteenth Amendments to the U.S. Constitution as they impermissibly restrict the GSA Plaintiffs' speech and association based on its content and viewpoint;

B. An order permanently enjoining Defendants from continuing their unlawful refusal to allow the Vanguard GSA (1) the same access to the forum for noncurricular student clubs that the school officials grant to other such clubs and (2) the ability to operate at the school;

C. An order permanently enjoining Defendants from taking retaliatory action against Plaintiffs for bringing this lawsuit or against the Vanguard GSA's faculty advisor for fulfilling that role;

D. An award to Plaintiffs of reasonable attorneys' fees and costs incurred in connection with this action from the Defendants pursuant to 42 U.S.C. § 1988;

E. An order directing the entry of judgment for each of the Plaintiffs against Defendants for nominal damages of $1;

F. An order retaining the Court's jurisdiction of this matter to enforce the terms of the Court's orders; and

G. Such further and different relief as is just and proper or that is necessary to make the Plaintiffs whole.

Dated: May 23, 2012

Respectfully Submitted,

/s/ Benjamin James Stevenson

| Benjamin James Stevenson | Randall C. Marshall |
| Fla. Bar. No. 598909 | Fla. Bar No.: 181765 |
| ACLU Found. of Fla. | ACLU Found. of Fla. |
| Post Office Box 12723 | 4500 Biscayne Blvd., Ste. 340 |
| Pensacola, FL 32591-2723 | Miami, FL 33137 |
| T. 786.363.2738 | T. 786.363.2700 |
| F. 786.363.1985 | F. 786.363.1108 |
| bstevenson@aclufl.org | RMarshall@aclufl.org |

*Counsel for Plaintiffs*